**15 CV 00053**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

CHRISTOPHER KELLY and
ARLEEN KELLY
                                Plaintiffs,

     -against-

CITY OF NEW YORK, POLICE
OFFICER EUGENE CHOI, SHIELD #3654,
NEW YORK CITY JOHN AND JANE
DOE POLICE OFFICERS

                              Defendants.

-------------------------------------------------------------x

_____Civ._____

ECF Case

**COMPLAINT**
**(Jury Trial Demanded)**

     Plaintiffs Christopher Kelly and Arleen Kelly, by and through their attorneys, Storch

Amini & Munves PC, for their Complaint allege as follows:

### NATURE OF THE ACTION

     1.     This is a civil rights action by which the Plaintiffs Christopher Kelly and Arleen

Kelly, seek relief for Defendants the City of New York and individual officers of the New York

City Police Department's tortuous conduct, violation of Plaintiffs' rights, privileges and

immunities secured by 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the

United States Constitution, as well as by the New York State Constitution and New York State

common law.

     2.     This suit arises from egregious conduct of officers of the New York City Police

Department.  On or about October 9, 2013, without justification or provocation, several officers

of the NYPD brutally assaulted Christopher Kelly in the hallway outside of the apartment he shares

with his wife and three small children at 35 West 92nd Street, Apt. 10G, New York, New York

1

10025.  The NYPD officers beat him with a blunt object, kicked, choked, and tasered him all over

his head and body, all while he was pinned to the ground, completely immobilized and, at times,

unconscious.  Throughout the assault, the officers laughed and joked with each other about hurting

Mr. Kelly.  The NYPD officers then falsely arrested, falsely detained, wrongfully imprisoned and

further injured Mr. Kelly without justification.

3.       In addition to assaulting Mr. Kelly, the Defendants harassed, falsely imprisoned,

and wrongfully and illegally seized his wife, Arleen Kelly.  Mrs. Kelly heard Mr. Kelly calling her

name and entered the living room.  Mrs. Kelly observed the Officer Defendants entering the Kelly

Residence without permission, wrongfully arrested Mrs. Kelly and intentionally prevented Mrs.

Kelly from seeing the hallway or her husband.  The officers unreasonably insisted that Mrs. Kelly

be taken to the hospital for evaluation against her will.   When Mrs. Kelly refused, an officer

threatened to take away Mrs. Kelly's children.  That same male officer (despite the presence of a

female officer at the scene) followed Mrs. Kelly to her bedroom and watched remove her pajamas

and dress herself to go to the hospital.  Mrs. Kelly was then illegally seized from her residence

against her will.

## PARTIES

4.       Plaintiff Christopher Kelly is a citizen of the United States, and is, and was at all

times relevant to this action, a resident of New York.

5.       Plaintiff Arleen Kelly is a citizen of the United States, and is, and was at all times

relevant to this action, a resident of New York.

6.       Defendant City of New York ("City") is a municipality organized and existing

under the laws of the State of New York.  At all relevant times, the City, acting through the

2

NYPD, was responsible for the appointment, training, supervision, conduct and discipline of police officers of the NYPD, including the individual defendants named in this complaint.

7.  Upon information and belief, Defendant Police Officer Eugene Choi ("Officer Choi"), shield #3654 of the 24th Precinct, was at all times relevant to this complaint an NYPD officer employed by Defendant City and acted in the capacity of agent, servant and employee of Defendant City, and within the scope of his employment as such.

8.  Upon information and belief, Defendants John and Jane Does (whose identities and number of are unknown but who are known to be police officers and employees of the NYPD of the 24th precinct) were at all times relevant to this complaint NYPD officers employed by Defendant City and acted in the capacity as agents, servants and employees of Defendant City, and within the scope of their employments as such.

9.  Collectively, Defendants Officer Choi and Defendants John and Jane Does are referred to as "the Officer Defendants."

## JURISDICTION AND VENUE

10.  This action arises under the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983 and 1988, and New York State Law.

11.  The jurisdiction of this Court is predicated upon 28 U.S.C. § 1331, 1343(a)(3) and (4), and 1367(a).

12.  The acts complained of occurred in the Southern District of New York, and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

## JURY DEMAND

13.  Plaintiff demands trial by jury in this action on each and every one of their claims.

## NOTICE OF CLAIM

14.     On or about January 6 and 7, 2014, Plaintiffs timely filed Notices of Claim with the Comptroller of the City of New York, setting forth the facts underlying Plaintiffs' claims against Defendants.

15.     The City assigned claim number 2014PI00680 to Plaintiff Christopher Kelly's claim, and Plaintiff Christopher Kelly was subjected to an examination pursuant to N.Y. Gen. Mun. L. Sec. 50-h on May 19, 2014.

16.     The City assigned claim number 2014PI00682 to Plaintiff Arleen Kelly's claim, and Plaintiff Arleen Kelly was subjected to an examination pursuant to N.Y. Gen. Mun. L. Sec. 50-h on August 15, 2014.

17.     This matter has not been settled or otherwise disposed of.

18.     This action has been commenced within one year and ninety days of the date of occurrence of the events giving rise to this Complaint.

## FACTUAL ALLEGATIONS

19.     During the evening of October 8, 2013 and continuing into the early hours October 9, 2013, Plaintiffs Christopher and Arleen Kelly had been engaged in a serious discussion in one of the bedrooms at the Kelly Residence.  Their three young children, two age five years old and one age eight years old, slept in adjacent bedroom.

20.     Around midnight on October 9, 2013, Mrs. Kelly wished to end the conversation and commented that she was going to jump out of the apartment window.  Mrs. Kelly was not serious.  As they were engaged in a tense discussion, Mr. Kelly mistook the gravity of her comment and called 911.  As Mr. and Mrs. Kelly continued to talk and Mrs. Kelly got into bed, it quickly became clear to Mr. Kelly that he had misinterpreted Mrs. Kelly's statement.  However,

the emergency operator had already answered.  Mr. Kelly informed the 911 operator that there

had been a misunderstanding and that help was not needed.   Mr. Kelly hung up the phone.

### The Officer Defendants' Arrival at the Kelly Residence

21.     Shortly after Mr. Kelly hung up the phone, Plaintiffs heard the apartment buzzer

located directly outside the front door to the apartment.  Mr. Kelly went to the door, opened it,

and saw uniformed NYPD officers, the Officer Defendants, in the hallway directly outside the

Kelly Residence.

22.     The Officer Defendants asked to enter the Kelly Residence.  Mr. Kelly told the

officers that his wife and children were sleeping, and that he preferred that they did not enter the

apartment.  Mr. Kelly was standing in the doorway of the apartment, but did not attempt to close

the door.

23.     One of the Officer Defendants, upon information and belief, Officer Eugene Choi,

put his foot in the door way, making it impossible for Mr. Kelly to shut the door to the

apartment.

24.     One of the Officer Defendants, upon information and belief, Defendant Officer

Choi, then indicated that Mr. Kelly would be arrested.  Two of the other Officer Defendants

grabbed Mr. Kelly by the arms and head, forcibly removed him from his apartment and pulled

him into the hallway.

25.     Upon information and belief, Defendant Officer Choi proceeded to beat Mr. Kelly

over the head with a hard object.  The other Officer Defendants began punching and kicking Mr.

Kelly, surrounding him from all sides and punched or kicked him in the back, torso, face and

head.  Mr. Kelly was slammed into the floor and the Officer Defendants stood on his arms and

kicked him in his back, legs and shoulders.  At some point, Mr. Kelly began to feel blood

running down the back of his head.   The Officer Defendants kicked and stepped on Mr. Kelly so forcefully that following the assault, imprints from the Officer Defendants' boots remained on his arms.

26.     One of the Officer Defendants demanded that Mr. Kelly put his arms behind his back.  However, one of the other Officer Defendants continued to stand on Mr. Kelly's arms, pinning them to the ground, making it impossible for Mr. Kelly to comply with the Officer Defendants' commands. Mr. Kelly attempted to express to the Officer Defendants that he could not put his arms behind his back while they were pinned to the ground.  Mr. Kelly was also choked by one or more of the Officer Defendants from behind.  At some point during the assault, Mr. Kelly's glasses were broken by the impact of the blows.

27.     While Mr. Kelly remained pinned to the ground and unable to move or speak in the hallway outside his residence, one of the Officer Defendants began repeatedly tasering Mr. Kelly's back.  Mr. Kelly was screaming in pain, out of breath, immobile throughout the taser assault.

28.      The Officer Defendants also continued to demand that Mr. Kelly put his arms behind his back, which he attempted to do so throughout the assault.  However, because the Officer Defendants had already pinned him down, he was immobile and unable to comply with their direction.

29.     Mr. Kelly drifted in and out of consciousness throughout and subsequent to the assault.

30.     At one point, after Mr. Kelly had been placed in both handcuffs and leg shackles. Mr. Kelly raised himself into a standing position with the permission of the Officer Defendants, and two of the Officer Defendants began shoving him back and forth.  One of the Officer

Defendants would pull his handcuffed arms farther backward in a twisting motion, then shove him forward, as the first officer's shove propelled him toward the second officer, the second officer would push him backward to the first officer. Those two Officer Defendants shoved Mr. Kelly back-and-forth in this fashion repeatedly. During this time, Mr. Kelly was injured and in pain and the twisting and shoving exacerbated the already severe pain in shoulders. Mr. Kelly repeatedly expressed that the officers were hurting him and that he felt as if his shoulders were being pulled out of socket but the assault did not stop. The other Officer Defendants did not intervene when Mr. Kelly was being shoved back and forth, or at any time during the assault.

31.    The Officer Defendants proceeded to heckle and curse at Mr. Kelly. The Officer Defendants laughed at, made fun of, cursed at and humiliated Mr. Kelly throughout the assault in the hallway outside the Kelly Residence. Mr. Kelly continuously told the Officer Defendants that his shoulders were in severe pain from the strain of the position in which he was handcuffed. None of the Officer Defendants offered to or attempted to loosen or reposition the handcuffs.

### The Officer Defendants Unlawfully Enter the Kelly Residence

32.    When the assault of Mr. Kelly began in the hallway, Mrs. Kelly was in her bedroom in the Kelly Residence. Mrs. Kelly heard Mr. Kelly yelling her name, and left the bedroom to determine what was happening. When she entered the living room of her home, she observed one of the Officer Defendants entered the Kelly Residence without request or permission to do so.

33.    One of the Officer Defendants directed Mrs. Kelly to a chair in the living room which was out of the line of sight of the doorway and hallway outside the apartment. The Officer Defendant forced her into a chair and handcuffed her.

34.     At one point, Mrs. Kelly observed approximately four of the Officer Defendants in her apartment, three males and one female.  Mrs. Kelly continued to hear Mr. Kelly calling her name while she was confined to the chair in her living room.  Mrs. Kelly remained calm in response to the Officer Defendants' commands, but did not consent to their entry to the Kelly Residence or her confinement.

35.     While she was handcuffed to a chair in her home, and the assault of her husband in the hall was ongoing, Mrs. Kelly repeatedly asked the officers to close a door in the apartment so her sleeping children would not wake up.  The Defendant Officers, ignored her requests.

36.     The Officer Defendants told Mrs. Kelly she needed to find someone to take care of her children because they were forcing her to be taken to the hospital for a psychiatric evaluation.  Paramedics entered her apartment to take her to the hospital.  Fearful and intimidated, Mrs. Kelly began making phone calls in an attempt to quickly find childcare in the middle of the night.  The Officer Defendants continued their threats to take away the Kelly's three children if Mrs. Kelly did not comply with their orders.

37.     Mrs. Kelly was escorted to her bedroom by one of the male Officer Defendants to change clothes before being taken to the hospital, despite the fact that one of the Officer Defendants at the Kelly Residence was female.  A male Officer Defendant watched Mrs. Kelly undress and change clothes, further humiliating her in her own home.

### The Illegal Seizure of Mrs. Kelly

38.     The Officer Defendants along with a paramedic crew escorted Mrs. Kelly out of the Plaintiffs' apartment and into the hallway outside the Kelly Residence.  Mrs. Kelly observed her husband, Mr. Kelly, handcuffed, bloodied and bruised in the hallway.  Mrs. Kelly saw the electric light of the taser being used on Mr. Kelly and a pool of blood on the ground.  Mrs. Kelly

was placed in an ambulance and escorted, against her will, by one of the Officer Defendants to a hospital.

39.     Upon arrival at the hospital, one of the Officer Defendants told Mrs. Kelly that he would wait for her to escort her home after she saw a doctor.  Mrs. Kelly was given a psychiatric evaluation.  Mrs. Kelly did not request, and was not given, any further treatment and was promptly released to herself.

40.     Upon her release from the psychiatric ward, Mrs. Kelly realized the Officer Defendant who had promised to wait for her release in order to escort her home had left, leaving Mrs. Kelly in an unfamiliar neighborhood, in the middle of the night, without any phone or money.

<u>**Mr. Kelly's Unlawful Detainment**</u>

41.     After Mrs. Kelly was unwillingly taken to the psychiatric ward, Mr. Kelly was placed on a stretcher by paramedics.  Mr. Kelly was handcuffed to the stretcher and was completely immobilized.  Mr. Kelly expressed that he did not want to go to the hospital but the officers instructed the paramedics that he must go to the hospital for treatment.

42.     Mr. Kelly was transported, against his will, to a hospital for treatment.  At the hospital, Mr. Kelly was treated for his head injury, bloody lips, bloody nose, taser burns and bruises all over his body and shoulder injuries.  Seven staples were put in place to close the severe laceration on the back of his head.

43.     While he was at the hospital, Mr. Kelly overheard the accompanying officers attempting to fabricate a story that would account for his severe injuries.

44.     Mr. Kelly was taken from the hospital to the Officer Defendants' precinct and placed in a holding cell and remained there through the morning.  Throughout his time in the

holding cell, Mr. Kelly observed the Officer Defendants joking about the incident and simultaneously attempting to align their stories to explain Mr. Kelly's injuries.

45.     At the precinct, one of the Officer Defendants, upon information and belief Defendant Officer Choi, attempted to pressure Mr. Kelly into signing paperwork stating that he had accepted medical treatment.  Upon information and belief, Defendant Officer Choi took Mr. Kelly's wallet and watch and implied that the items would be unfortunately "lost" unless he signed the forms.  Upon information and belief, Defendant Officer Choi only returned the items to Mr. Kelly when Internal Affairs officers arrived at the precinct and instructed Mr. Kelly not to tell the Internal Affairs officers that the items were taken from him.

46.     Mr. Kelly met with two Internal Affairs officers at the precinct.  Mr. Kelly recounted the incident to those officers.

47.     Mr. Kelly was taken to Central Booking at approximately 10 am on October 9, 2013 and remained there for approximately twelve hours.  Mr. Kelly was charged with obstructing governmental administration and resisting arrest.  Mr. Kelly was granted an adjournment in contemplation of dismissal on or about January 30, 2014 and consistent therewith, the charges against him were dismissed approximately six-months later.

**Plaintiffs' Continued Treatment Following the Incident on October 9, 2013**

48.     Plaintiffs Christopher and Arleen Kelly have received, and continue to receive, extensive medical and psychiatric care for the physical and emotional injuries stemming from the incident on October 9, 2013.

49.     Mr. Kelly was so traumatized by the events occurring on October 9, 2013 that he no longer felt comfortable living in the presence of NYPD Officers and felt it necessary to leave New York City.  Mr. Kelly stayed with relatives in Seattle, Washington for a few months

following the incident where he sought treatment for his physical and emotional injuries.

Plaintiffs also suffered financial losses during this time period for additional expenses related to

the care of their young children and loss of Mr. Kelly's income while Mr. Kelly was recuperating

in Seattle.

       50.    Mr. Kelly returned to New York City in late December 2013.  Since that time,

Mr. Kelly has consistently sought, and is still seeking, treatment for his injuries from physicians,

including without limitation, physical therapists, psychologists and other medical professionals.

Most recently, Mr. Kelly underwent shoulder surgery associated with his injuries.

       51.    Mrs. Kelly was treated for her injuries following the incident, and continues to

receive medical treatment for the trauma, humiliation and psychological shock stemming from

the Officer Defendants' conduct and actions.

**FIRST CAUSE OF ACTION**
42 U.S.C. § 1983 – Excessive Force
(Plaintiff Christopher Kelly Against the Officer Defendants)

       52.    Plaintiffs repeat and reassert all allegations contained in prior paragraphs as if

fully set forth herein.

       53.    The conduct and actions of the Officer Defendants acting in concert and under

color of law, in authorizing, directing and/or causing the beating with a blunt object, kicking,

choking and tasering of Plaintiff Christopher Kelly, was excessive and unreasonable, was done

intentionally, willfully, maliciously, with a deliberate indifference and/or with a reckless

disregard for the natural and probable consequences of their acts, was done without lawful

justification or reason and was designed to and did cause specific and serious physical and

emotional pain and suffering in violation of Plaintiff Christopher Kelly's rights, privileges and

immunities as guaranteed under 42 USC § 1983, and the Fourth and Fourteenth Amendments to

11

the United States Constitution, including the right to be free from an unreasonable seizure of his person and the right to be free from the use of excessive, unreasonable, and unjustified force.

54.     The Officer Defendants acted under pretense and color of state law and in their individual and official capacities and/or within the scope of their respective employments as NYPD officers. Said acts by the Officer Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said Defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff Christopher Kelly of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

55.     As a direct and proximate result of the foregoing, Plaintiff Christopher Kelly was subjected to physical and emotional pain and humiliation, was deprived of his liberty, and was otherwise damaged and injured.

## SECOND CAUSE OF ACTION
False Arrest and False Imprisonment
(Plaintiff Christopher Kelly Against All Defendants)

56.     Plaintiffs repeat and reassert all allegations contained in prior paragraphs as if fully set forth herein.

57.     The acts and conduct of the Officer Defendants in wrongfully and illegally arresting and detaining Plaintiff Christopher Kelly, falsely charging him with obstructing governmental administration and resisting arrest, constitute false arrest and false imprisonment under the laws of the State of New York.

58.     Defendants intended to confine Plaintiff Christopher Kelly, confined Plaintiff Christopher Kelly, and Plaintiff Christopher Kelly was conscious of the confinement. In

addition, Plaintiff Christopher Kelly did not consent to the confinement and the confinement was not otherwise privileged.

59.     Defendants subjected Plaintiff Christopher Kelly to false arrest, false imprisonment and deprivation of liberty without probable cause.

60.     The wrongful, unjustifiable, and unlawful apprehension, arrest and detention of Plaintiff Christopher Kelly was carried out without any basis, without Plaintiff's consent, and without probable cause or reasonable suspicion.

61.     At all relevant times, the Officer Defendants acted forcibly in apprehending and arresting Plaintiff Christopher Kelly.

62.     Throughout this period, Plaintiff Christopher Kelly was unlawfully, wrongfully, and unjustifiably held under arrest, deprived of his liberty ad falsely charged.

63.     All this occurred without any fault or provocation on the part of Plaintiff Christopher Kelly.

64.     The Officer Defendants were at all times agents, servants, and employees acting within the scope of their employment by the City of New York and the New York Police Department, which are therefore responsible for their conduct.

65.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff Christopher Kelly sustained the damages hereinbefore alleged.

### THIRD CAUSE OF ACTION
Assault
(Plaintiff Christopher Kelly Against All Defendants)

66.     Plaintiffs repeat and reassert all allegations contained in prior paragraphs as if fully set forth herein.

67.     The Officer Defendants intentionally, willfully, and maliciously assaulted Plaintiff Christopher Kelly in that they had the real or apparent ability to cause imminent harmful and/or offensive bodily contact and intentionally did violent and/or menacing acts which threatened such contact to Plaintiff Christopher Kelly, and that such act(s) caused apprehension of such contact in Plaintiff Christopher Kelly.

68.     All this occurred without any fault or provocation on the part of Plaintiff Christopher Kelly.

69.     The Officer Defendants were at all times agents, servants, and employees acting within the scope of their employment by the City of New York and the New York Police Department.

70.     The City of New York, as the employer of the Officer Defendants, is responsible for their wrongdoing under the doctrine of respondeat superior.

71.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages herein before alleged.

### FOURTH CAUSE OF ACTION
Battery
(Plaintiff Christopher Kelly Against All Defendants)

72.     Plaintiffs repeat and reassert all allegations contained in prior paragraphs as if fully set forth herein.

73.     The Officer Defendants intentionally, willfully, and maliciously battered Plaintiff Christopher Kelly in that they deliberately touched Plaintiff Christopher Kelly and/or caused Plaintiff Christopher Kelly to be touched, and such physical contact was offensive, unwelcome, and without consent.

74.     All this occurred without any fault or provocation on the part of Plaintiff Christopher Kelly.

75.     The Officer Defendants were at all times agents, servants, and employees acting within the scope of their employment by the City of New York and the New York Police Department.

76.     The City of New York, as the employer of the Officer Defendants, is responsible for their wrongdoing under the doctrine of respondeat superior.

77.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages herein before alleged.

### FIFTH CAUSE OF ACTION
Intentional Infliction of Emotional Distress
(Plaintiff Christopher Kelly Against All Defendants)

78.     Plaintiffs repeat and reassert all allegations contained in prior paragraphs as if fully set forth herein.

79.     The Officer Defendants' conduct, in kicking, punching, choking, tasering, assaulting, battering, harassing and humiliating Mr. Kelly, was extreme, outrageous, and utterly intolerable in a civilized community; conduct which exceeded all reasonable bounds of decency.

80.     The Officer Defendants' conduct, described above, was intended to and did cause severe emotional distress to Plaintiff Christopher Kelly.

81.     The Officers Defendants' conduct was the direct and proximate cause of injury and damage to Plaintiff Christopher Kelly and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

82.     As a result of the foregoing, Plaintiff Christopher Kelly was deprived of his liberty, was subjected to serious physical and emotional pain and suffering, and was otherwise damaged and injured.

### SIXTH CAUSE OF ACTION
Negligent Infliction of Emotional Distress
(Plaintiff Christopher Kelly Against All Defendants)

83.     Plaintiffs repeat and reassert all allegations contained in prior paragraphs as if fully set forth herein.

84.     Plaintiffs repeat and reassert all allegations contained in prior paragraphs as if fully set forth herein.

85.     The Officer Defendants' conduct, in assaulting, battering, harassing and humiliating Plaintiff Christopher Kelly, was careless and negligent to the emotional health of Plaintiff Christopher Kelly, and caused severe emotional distress to Plaintiff Christopher Kelly.

86.     The acts and conduct of the Officer Defendants were the direct and proximate cause of injury and damage to Plaintiff Christopher Kelly and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

87.     As a result of the foregoing, Plaintiff Christopher Kelly was deprived of her liberty, was subjected to serious physical and emotional pain and suffering, and was otherwise damaged and injured.

### SEVENTH CAUSE OF ACTION
False Imprisonment
(Plaintiff Arleen Kelly Against All Defendants)

88.     Plaintiffs repeat and reassert all allegations contained in prior paragraphs as if fully set forth herein.

89.     The acts and conduct of the Officer Defendants in wrongfully and illegally detaining Plaintiff Arleen Kelly constitute false arrest and false imprisonment under the laws of the State of New York..

90.     The Officer Defendants intended to confine Plaintiff Arleen Kelly and, in fact, confined Plaintiff Arleen Kelly, and Plaintiff Arleen Kelly was conscious of the confinement. In addition, Plaintiff did not consent to the confinement and the confinement was not otherwise privileged.

91.     All this occurred without any fault or provocation on the part of Plaintiff Arleen Kelly.

92.     The Officer Defendants were at all times agents, servants, and employees acting within the scope of their employment by the City of New York and the New York Police Department, which are therefore responsible for their conduct.

93.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff Arleen Kelly sustained the damages hereinbefore alleged.

## EIGHTH CAUSE OF ACTION
Intentional Infliction of Emotional Distress
(Plaintiff Arleen Kelly Against All Defendants)

94.     Plaintiffs repeat and reassert all allegations contained in prior paragraphs as if fully set forth herein.

95.     The Officer Defendants' conduct, in confining Mrs. Kelly, away from both her husband and her young children, and humiliating her by forcing her to change clothes in the presence of an observing male officer, was extreme, outrageous, and utterly intolerable in a civilized community; conduct which exceeded all reasonable bounds of decency.

17

96.     The Officer Defendants' conduct, described above, was intended to and did cause severe emotional distress to Plaintiff Arleen Kelly.

97.     The Officers Defendants' conduct was the direct and proximate cause of injury and damage to Plaintiff Arleen Kelly and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

98.     As a result of the foregoing, Plaintiff Arleen Kelly was deprived of her liberty, was subjected to serious physical and emotional pain and suffering, and was otherwise damaged and injured.

**NINTH CAUSE OF ACTION**
Negligent Infliction of Emotional Distress
(Plaintiff Arleen Kelly Against All Defendants)

99.     Plaintiffs repeat and reassert all allegations contained in prior paragraphs as if fully set forth herein.

100.    The Officer Defendants' conduct, in harassing and humiliating Plaintiff Arleen Kelly, was careless and negligent to the emotional health of Plaintiff Arleen Kelly, and caused severe emotional distress to Plaintiff Arleen Kelly.

101.    The acts and conduct of the Officer Defendants were the direct and proximate cause of injury and damage to Plaintiff Arleen Kelly and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

102.    As a result of the foregoing, Plaintiff Arleen Kelly was deprived of her liberty, was subjected to serious physical and emotional pain and suffering, and was otherwise damaged and injured.

**TENTH CAUSE OF ACTION**
Negligent Hiring, Training, Discipline and Retention of Employment Services
(Plaintiffs Against All Defendants)

103.    Plaintiffs repeat and reassert all allegations contained in prior paragraphs as if fully set forth herein.

104.    The City of New York, through the NYPD, owed a duty of care to Plaintiffs to prevent the physical and mental abuse sustained by Plaintiffs. Under the same or similar circumstances, a reasonable, prudent, and careful person would have anticipated that an injury to Plaintiffs or to those in a like situation would probably result from this conduct.

105.    Upon information and belief, the Officer Defendants were unfit and incompetent for their positions as police officers.

106.    Upon information and belief, the City of New York knew or should have known through the exercise of reasonable diligence that the Officer Defendants were dangerous.

107.    Upon information and belief, the City of New York's negligence in hiring, training, disciplining, and retaining the Officer Defendants proximately caused Plaintiff's injuries set forth above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

a.      Compensatory damages in the amount to be determined by a jury;

b.      Punitive damages in an amount to be determined by a jury;

c.      Reasonable attorneys' fees and costs under 42 U.S.C. 1988;

d.      Such other and further relief as this court may deem just and proper.

Dated: New York, New York
        January 6, 2015

STORCH AMINI & MUNVES PC

By:

        Steven G. Storch
2 Grand Central Tower
140 East 45th Street, 25th Floor
New York, New York 10017
Tel: (212) 490-4100
*Attorneys for Plaintiff*